FILED - USDC - FLMD - ORL
OCT 30 2026 PM3:36

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

YULIYA GLAZMAN, Case No.: 6:26-cv-2555-PGB-CAB

*Plaintiff,*

v.

CITIBANK, N.A.,

*Defendant.*

_______________________________/

## COMPLAINT AND JURY DEMAND

### NATURE OF THE ACTION

1. Plaintiff Yuliya Glazman worked for Defendant Citibank, N.A. for more than fifteen cumulative years.

2. On March 16, 2026, while still employed by Defendant, Plaintiff filed Glazman v. Citigroup, Inc., No. 8:26-cv-01522-TPB-AEP (M.D. Fla.) (the "First Action"). The First Action asserts, among other claims, a hostile work environment because of sex, unequal pay, retaliation, and age discrimination.

3. After Plaintiff filed the First Action, Defendant tendered a separation agreement on April 7, 2026 that conditioned separation pay on Plaintiff's representation that no proceeding had been filed. Defendant recruited Plaintiff for an open internal position, interviewed her on April 23, 2026, and selected a male candidate. Defendant tendered a revised separation agreement on May 11, 2026 that identified the First Action by case number and conditioned payment on its

dismissal with prejudice. Defendant did not select or interview Plaintiff for any of the eleven positions for which she applied between May 23 and June 1, 2026. Defendant did not respond to her June 3, 2026 letter concerning those applications.

4. On August 5, 2026, Plaintiff filed Glazman v. Citigroup, Inc. and Citibank, N.A., No. 8:26-cv-02265-TPB-SPF (M.D. Fla.) (the "Second Action"), asserting retaliation claims based on that conduct.

5. After August 5, 2026, Plaintiff applied for further positions with Defendant. On August 18, 2026, Defendant refused two of those applications. On August 31, 2026, Plaintiff transmitted through Defendant's litigation counsel a letter dated August 30, 2026, addressed to three senior Legal and Risk officers of Citi, describing her retaliation claims and her contact with Defendant about reemployment.

6. On September 1, 2026, Defendant invited Plaintiff to interview for the position of Fund Accounting Analyst. Later that day, Defendant's litigation counsel wrote to Plaintiff, identified the three officers by name, stated that they did not consent to direct contact, directed Plaintiff not to communicate with them or with other current Citi employees concerning the subject matter of the pending proceedings without counsel's prior written consent, and reserved Citi's right to seek a protective or no-contact order and sanctions.

7. On September 3, 2026, Defendant interviewed Plaintiff. That afternoon, Plaintiff notified Defendant's litigation counsel of the interview and

reported that the September 1 communication had caused stress that continued during the interview. On September 16, 2026, Defendant refused to hire her.

8. On September 23, 2026, the court in the Second Action directed the parties to submit the claims asserted there to arbitration, stayed that action, and directed the Clerk to close the case. On October 30, 2026, Plaintiff voluntarily dismissed the Second Action without prejudice under Federal Rule of Civil Procedure 41(a)(1)(A)(i). This action combines the claims pleaded in the Second Action with claims arising from the employment decisions of August 18 and September 16, 2026.

9. Plaintiff sues under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-3(a) and 2000e-2(a)(1); the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3); the Age Discrimination in Employment Act, 29 U.S.C. § 623(d); and the Florida Private Sector Whistleblower Act, Fla. Stat. § 448.102(3).

**JURISDICTION AND VENUE**

10. This action arises under the laws of the United States. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331. Counts I and II arise under 42 U.S.C. §§ 2000e-3(a) and 2000e-2(a)(1). Count III arises under 29 U.S.C. § 215(a)(3). Count IV arises under 29 U.S.C. § 623(d).

11. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Count V, which arises under Fla. Stat. § 448.102(3). Count V arises from the same nucleus of operative facts as Counts I through IV.

12. Venue is proper in the Middle District of Florida under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b)(2). Plaintiff was employed by Defendant in this District. The protected activity, separation process, applications for reemployment, communications concerning those applications, interviews, and challenged employment decisions alleged in this Complaint occurred in, were conducted with Plaintiff in, or were directed into this District.

13. Plaintiff resides in Lake County, Florida. Lake County is within the Ocala Division. This action is filed in the Ocala Division under Local Rule 1.04.

14. During the post-separation period at issue, Plaintiff conducted the reemployment process from her Lake County residence. She submitted the applications at issue through Defendant's online application system from Lake County. She used her Lake County residence address in that process. She transmitted employment-related correspondence from Lake County. She received Defendant's application, interview, and non-selection communications in Lake County.

**ELECTION PURSUANT TO 9 U.S.C. §§ 401–402**

15. Plaintiff alleges that the recurring sex-differentiated working conditions described in Section A of the Factual Allegations constituted a hostile work environment because of sex. Plaintiff is the person alleging that conduct. She asserted that dispute in the First Action and before the Equal Employment Opportunity Commission.

16. The adverse actions alleged in this Complaint occurred after, and because of, Plaintiff's assertion and prosecution of that dispute. Each claim in this action arose and accrued after March 3, 2022.

17. Plaintiff elects, under 9 U.S.C. § 402(a), that no predispute arbitration agreement or predispute joint-action waiver is valid or enforceable with respect to this case. Plaintiff does not concede the existence, validity, scope, delegation, or enforceability of, or her assent to, any predispute arbitration agreement or predispute joint-action waiver.

18. The Employment Arbitration Policy that Citi filed in the Second Action states: "Disputes which are expressly precluded from arbitration by federal statute also are not covered by this policy."

**PARTIES**

19. Plaintiff Yuliya Glazman is a woman. She was born in 1985. She resides in Lake County, Florida.

20. Defendant employed Plaintiff for more than fifteen cumulative years, through May 7, 2026. During that employment Plaintiff worked at Defendant's Tampa-based operations. She was Defendant's employee on March 16, 2026. She was at least 40 years old when Defendant communicated the refusals of August 18, 2026 and September 16, 2026.

21. Defendant Citibank, N.A. is a national banking association and a subsidiary of Citigroup Inc. It maintains substantial operations in the Middle

District of Florida, including at its Tampa facility. It employs more than 500 people.

22. The separation agreement Defendant tendered to Plaintiff on May 11, 2026 describes her employment as employment "with Citibank N.A."

23. Plaintiff's written correspondence concerning her applications, described in Sections F, H, and K of the Factual Allegations, was addressed to Citibank, N.A., Human Resources — Talent Acquisition.

24. Defendant maintains a Talent Acquisition function and an online application system. Defendant posted the positions identified in this Complaint through that function. Defendant received Plaintiff's applications through that function. Plaintiff applied for each position through Defendant's online application system.

25. The personnel who took the employment actions challenged in this Complaint acted on behalf of Defendant.

26. Defendant maintains the internal records identifying the persons who directed, made, approved, and communicated the challenged hiring decisions.

**SCOPE OF THIS ACTION**

27. This action combines the claims formerly asserted in the Second Action with claims based on employment decisions through September 16, 2026. Plaintiff seeks recovery in this action only for adverse actions occurring on or after March 16, 2026 and on or before September 16, 2026. Conduct before that date is alleged to identify the underlying dispute, the protected activity, Defendant's

knowledge, and the parties' relationship. Plaintiff does not seek duplicative recovery for conduct already placed at issue in the First Action.

**FACTUAL ALLEGATIONS**

**A. The Sexual Harassment Dispute to Which This Action Relates**

28. During the period described in this Section, Plaintiff was the only woman on a five-person team in Defendant's Program Management – Business Execution organization.

29. She held the same job family classification and the same C-level designation as her four male colleagues.

30. Defendant paid Plaintiff below the published median for her classification.

31. Defendant paid her male colleagues in the same classification at or above the median.

32. Defendant rates employees on a scale of one to five. One is the highest rating. Plaintiff received a two for four consecutive years.

33. On September 27, 2024, Plaintiff asked her direct supervisor in writing for a compensation review. She identified Defendant's published compensation data showing that her salary was below the median for her classification.

34. Her supervisor and that supervisor's manager each acknowledged the disparity in writing. Each stated that it needed to be corrected.

35. Defendant's Human Resources department declined to conduct a compensation review.

36. The disparity was not corrected in the 2024 or 2025 year-end compensation processes.

37. In the fourth quarter of 2024, Defendant transferred primary responsibility for the team's headcount-approval process from Plaintiff to a newly hired male employee.

38. Defendant designated a second male employee, not Plaintiff, as his backup.

39. Defendant then directed Plaintiff to back up and correct the new employee.

40. On January 29, 2025, Plaintiff's supervisor directed her in writing to serve as the new employee's backup. The supervisor stated that the designated backup "seems unsure of the process still." The supervisor directed Plaintiff to "lead and guide" him.

41. On March 14, 2025, her supervisor and the new employee directed Plaintiff to investigate headcount matters and run the headcount-approval process as lead.

42. On September 30, 2025, Defendant again directed Plaintiff to serve as his backup.

43. During the January 2025 assignment, Plaintiff identified errors in the male employee's headcount-tracking report. She identified errors in the status

markings for approval requests. She identified errors in the Position IDs entered for individual requests.

44. She spent approximately one week reconciling data from multiple source systems and sending written corrections to senior managers.

45. That work displaced her core responsibilities. It placed pressure on her own deliverable deadlines.

46. During the March 2025 and September 2025 assignments, Plaintiff again identified errors in the male employee's work. She reconciled data from multiple source systems. She sent written corrections to senior leaders. That work displaced her core responsibilities.

47. The designated male backup remained in place.

48. Defendant assigned no male colleague comparable recurring corrective work.

49. Plaintiff received no additional compensation for the corrective assignments.

50. During 2025, senior leaders told Plaintiff they wished she still owned the process. Defendant did not return it to her.

51. In early 2026, Defendant reduced Plaintiff's work-from-home privileges. Defendant required her to report in person to Defendant's Tampa office two days per week.

52. On March 4, 2026, Defendant notified Plaintiff that her position would be eliminated effective May 7, 2026.

53. Defendant retained her male teammates in the same job family and C-level designation.

54. On March 6, 2026, Defendant terminated her access to email, internal platforms, and the internal job application portal. Her formal employment continued through May 7, 2026.

55. Plaintiff alleges that the recurring sex-differentiated working conditions described in this Section constituted a hostile work environment because of sex.

**B. Plaintiff's Protected Activity and Defendant's Knowledge**

56. On March 16, 2026, Plaintiff filed the First Action against Citigroup Inc.

57. Her complaint asserted a hostile work environment because of sex and sex-based pay discrimination under 42 U.S.C. § 2000e-2(a)(1). It asserted unequal pay under the Equal Pay Act, 29 U.S.C. § 206(d). It asserted retaliation under 29 U.S.C. § 215(a)(3) and 42 U.S.C. § 2000e-3(a). It asserted age discrimination under 29 U.S.C. § 623(a)(1).

58. Citigroup Inc. was served with process in the First Action on March 19, 2026.

59. On April 1, 2026, Plaintiff signed a charge of discrimination with the Equal Employment Opportunity Commission, EEOC Charge No. 511-2026-02539. The charge was filed with the Commission on April 2, 2026. The charge

names Citigroup, Inc. as respondent. It alleges discrimination based on sex and age, and retaliation.

60. On April 8, 2026, Jackson Lewis P.C. appeared as litigation counsel for Citigroup Inc. in the First Action. The same firm filed for Citigroup Inc. and Citibank, N.A. in the First Action on May 5, 2026 and represented both in the Second Action. References in this Complaint to Defendant's litigation counsel are to that firm. Citigroup Inc. and Citibank, N.A., the defendants in the First Action and the Second Action, are referred to together as "Citi."

61. On April 23, 2026, Plaintiff amended her complaint in the First Action and named Citibank, N.A. as a co-defendant.

62. On May 5, 2026, Defendant's litigation counsel filed a motion to compel arbitration in the First Action on behalf of Citi. Plaintiff continued to prosecute the First Action after May 5, 2026.

63. On August 5, 2026, Plaintiff filed the Second Action against Citigroup Inc. and Citibank, N.A. The Second Action asserted retaliation claims under 42 U.S.C. § 2000e-3(a), 29 U.S.C. § 215(a)(3), and Fla. Stat. § 448.102(3), and a sex-discrimination claim under 42 U.S.C. § 2000e-2(a)(1), arising from conduct between March 16, 2026 and August 5, 2026.

64. Citigroup Inc. and Citibank, N.A. were served in the Second Action on August 6, 2026.

65. On August 7, 2026, Defendant's litigation counsel received by email Plaintiff's motion to correct the August 5, 2026 order in the First Action, her

supporting declaration, and her August 6, 2026 letter to Citibank, N.A., Human Resources — Talent Acquisition, as described in Sections G and H. The motion and declaration were filed in the First Action on August 10, 2026.

66. On August 31, 2026, Plaintiff transmitted through Defendant's litigation counsel a letter dated August 30, 2026, describing her retaliation claims and her contact with Defendant about reemployment, as described in Section K.

67. On September 3 and September 8, 2026, Plaintiff notified Defendant's litigation counsel in writing that Defendant had interviewed her and was considering her for a position, as described in Section K. In her September 3, 2026 email, Plaintiff also reported the effect of counsel's September 1, 2026 communication, as described in Section K.

68. On September 18, 2026, Plaintiff filed a further charge of discrimination with the Equal Employment Opportunity Commission concerning the refusals of August 18, 2026 and September 16, 2026, as described in Section N.

### C. The April 7, 2026 Separation Agreement

69. On April 7, 2026, Defendant delivered a Separation Agreement and General Release to Plaintiff. The instrument bears a printed date of March 6, 2026.

70. When Defendant delivered the agreement, the First Action had been pending for 22 days. Citigroup Inc. had been served with process in the First

Action nineteen days earlier. Plaintiff had filed Charge No. 511-2026-02539 five days earlier.

71. Paragraph 7(b) of the Separation Agreement required Plaintiff to represent and warrant that she had not filed, directly or indirectly, or caused to be filed, any legal proceeding against Citi or the identified releasees in any state or federal court or in arbitration.

72. The First Action was pending against Citigroup Inc. when Defendant delivered the agreement. The representation required by Paragraph 7(b) was inaccurate when Defendant delivered the agreement.

73. The Separation Agreement conditioned Plaintiff's receipt of the separation pay described in it on her execution of the agreement, including the representation in Paragraph 7(b). If Plaintiff did not execute the agreement, Defendant would not pay that separation pay.

### D. The April 2026 Internal Recruitment, Interview, and Non-Selection

74. After Plaintiff filed the First Action, and while she remained employed by Defendant, Defendant's personnel recruited Plaintiff for an open internal position. Plaintiff did not solicit this recruitment.

75. On April 23, 2026, Defendant interviewed Plaintiff for the internal position.

76. At the conclusion of the interview, Defendant's personnel advised Plaintiff that she would receive follow-up within approximately one week.

77. Defendant did not provide the stated follow-up within the stated timeframe. Plaintiff sent a follow-up communication. Defendant did not respond.

78. Defendant selected a male candidate for the position.

79. Defendant made that decision before Plaintiff's separation date of May 7, 2026, while Plaintiff remained its employee.

80. Plaintiff was qualified for the internal position. Defendant's personnel identified Plaintiff for the position and initiated the recruitment.

**E. The May 11, 2026 Revised Separation Agreement**

81. On May 11, 2026, six days after Citi moved on May 5, 2026 to compel arbitration of the First Action, Defendant tendered a revised Separation Agreement.

82. Paragraph 5(a) of the revised agreement included the claims asserted in the First Action, identified by case number, within the scope of Plaintiff's release.

83. Paragraph 7(b) of the revised agreement required Plaintiff to acknowledge that she would dismiss the First Action with prejudice and release all claims asserted in it, including the sexual harassment allegations, in exchange for the consideration provided in the agreement.

84. Paragraph 17(a)(ii) of the revised agreement conditioned Defendant's payment obligation on Defendant's receipt of an order from the court reflecting that the First Action had been dismissed with prejudice.

85. Paragraph 16 of the revised agreement provided that disputes concerning the validity, interpretation, or enforcement of the agreement would be resolved through binding arbitration.

86. Paragraph 18 of the revised agreement provided that Defendant, as prevailing party, would be entitled to attorneys' fees and expenses incurred in connection with enforcing Defendant's rights under that paragraph. Paragraph 18 contained no reciprocal fee-recovery provision for Plaintiff.

87. Plaintiff did not execute the original or the revised Separation Agreement.

### F. The May 23 – June 3, 2026 Post-Separation Applications and the June 3, 2026 Letter

88. Following the conclusion of her employment on May 7, 2026, Plaintiff applied for open positions with Defendant for which she was qualified. She submitted each application through Defendant's online application system from her residence in Lake County, Florida. She used her Lake County residence address in the application process.

89. Between May 23, 2026 and June 1, 2026, Plaintiff submitted twelve applications for eleven open positions:

a. Senior Business Data Analyst — AVP, Job ID 291248321, applied May 23, 2026;

b. Vice President Middle Office Trade Service Manager, Job ID 291487493, applied May 23, 2026;

c. Transaction Manager, Job ID 12532596, applied May 23, 2026;

d. Operations Core Project Lead Analyst, Job ID 12533751, applied May 23, 2026;

e. Sr Business Associate, Job ID 292402011, applied May 23, 2026;

f. Prime Finance Delta One Middle Office Analyst (Hybrid), Job ID 292008677, applied May 30, 2026;

g. Operations Core Project Lead Analyst, Job ID 12533751, renewed application for the position identified in item d, submitted May 30, 2026;

h. Fin Solutions Lead Analyst, Job ID 291981603, applied May 30, 2026;

i. Business Analytics Sr Analyst, AVP, Job ID 26940600, applied June 1, 2026;

j. Sr Business Associate, Job ID 26959790, applied June 1, 2026;

k. Data Quality Lead Analyst Vice President, Job ID 26958094, applied June 1, 2026;

l. Fin Solutions Lead Analyst, Job ID 26960904, applied June 1, 2026.

90. Each position was within Plaintiff's experience and qualifications. Plaintiff had more than fifteen years of cumulative service with Defendant. In April 2026, Defendant's own personnel had recruited her, unsolicited, for an open internal position.

91. On June 3, 2026, Plaintiff transmitted from Lake County a written request for application status updates to Citibank, N.A., Human Resources — Talent Acquisition, by certified mail, return receipt requested.

92. The June 3, 2026 letter identified each of the twelve applications listed in this Section by position title, Job ID, and application date. It stated Plaintiff's continued interest in returning to employment with Defendant. It requested the status of each application. It stated her availability for interviews.

93. Defendant received the June 3, 2026 letter.

94. On June 3, 2026, Plaintiff advised Defendant's litigation counsel in writing that the letter had been transmitted.

95. Defendant did not respond to the June 3, 2026 letter.

96. As to certain of the positions, Defendant notified Plaintiff that her candidacy would not proceed. Plaintiff received those notifications in Lake County. As to the remaining positions, Defendant provided no substantive response.

97. Defendant did not select Plaintiff for any of the eleven positions. Defendant did not schedule an interview for any of them. Defendant did not communicate the status of Plaintiff's candidacy for any position for which no rejection issued.

98. On information and belief, Defendant filled, or proceeded to fill, one or more of the positions with candidates other than Plaintiff.

### G. The August 5, 2026 Order and Plaintiff's Request to Correct Its Performance-Rating Statement

99. On August 5, 2026, United States District Judge Thomas P. Barber entered an order in the First Action permitting Citi to enforce the arbitration

agreement, staying the action pending arbitration, and directing its administrative closure.

100. In its Background section, the order described Plaintiff's allegations concerning her compensation and bonuses. It stated that "the amounts of those bonuses reflected poor performance ratings given to her by Defendants."

101. Plaintiff's First Amended Complaint in the First Action, filed on April 23, 2026, alleged that Defendant used a one-to-five performance-rating scale on which one was the highest rating. It alleged that Plaintiff received a two, the second-highest rating, for each of the 2022, 2023, 2024, and 2025 performance years.

102. The First Amended Complaint also alleged that Plaintiff's bonuses corresponded to those ratings and that Defendant increased her bonus in January 2026.

103. On August 5, 2026, Plaintiff filed the Second Action. On August 6, 2026, Citi was served in the Second Action.

104. Plaintiff prepared a motion dated August 7, 2026 requesting correction of the performance-rating statement and executed a supporting declaration that day. The motion and declaration were filed in the First Action on August 10, 2026.

105. The motion requested correction of that statement without changing the arbitration determination, stay, administrative closure, or other relief ordered.

106. Plaintiff's declaration stated that she was actively seeking financial-services employment and had pending applications. It stated that, based on her approximately nineteen years of industry experience, candidate screening included review of publicly available records. It stated that the order was publicly accessible through the Court's electronic records system.

### H. The August 6, 2026 Applications and the August 7, 2026 Communications

107. On August 6, 2026, Plaintiff applied from Lake County for three positions with Defendant. The first was KYC Modernization Execution Office Business Analyst, Job ID 26978115. The second was Implementation Management Senior Specialist, Job ID 26971329. The third was COB & CM Senior Analyst, Job ID 26964430.

108. Before August 18, 2026, Plaintiff applied for a fourth position, Model Analytics Validation Senior Analyst Assistant Vice President, Job ID 26940044.

109. Plaintiff was qualified for each position. She had more than fifteen years of service with Defendant in financial operations, reporting, and analysis. Defendant had rated her performance a two on its one-to-five scale for four consecutive years.

110. By letter dated August 6, 2026, sent by certified mail on August 7, 2026 and bearing her Lake County return address, Plaintiff notified Citibank, N.A., Human Resources — Talent Acquisition of the three August 6 applications by title and Job ID.

111. The letter stated that she remained enthusiastic about returning to Citi. It asked for the status of each application. It stated her availability for interviews. It stated that she would write again in approximately thirty days.

112. At approximately 9:15 a.m. on August 7, 2026, Defendant's litigation counsel received by email the motion to correct, the declaration, and the August 6, 2026 letter.

113. At approximately 11:15 a.m. on August 7, 2026, counsel responded. The response read, in its entirety: "Defendant opposes your motions."

114. Defendant did not respond to the August 6, 2026 letter.

**I. The August 18, 2026 Refusals**

115. On August 18, 2026, Defendant notified Plaintiff that it had declined her applications for COB & CM Senior Analyst, Job ID 26964430, and Model Analytics Validation Senior Analyst Assistant Vice President, Job ID 26940044.

116. Plaintiff received those notifications while residing in, and conducting the application process from, Lake County.

117. The August 18, 2026 refusals came thirteen days after Plaintiff filed the Second Action. They came twelve days after Citi was served with it. They came eleven days after Defendant's litigation counsel received the motion to correct, the declaration, and the August 6, 2026 letter.

**J. The August 24 – 27, 2026 Litigation Sequence**

118. On August 24, 2026, Citi filed an opposition to the correction motion in the First Action. Citi interpreted the order as describing Plaintiff's belief that

her bonuses were comparable to those of a poorly performing employee, rather than as stating that she actually received poor ratings. Citi stated that the proposed correction would not change the ruling. Citi stated that "it was Plaintiff's choice, not Citi's, to file this public lawsuit in lieu of confidential arbitration to which she agreed, knowing that information about her employment with Citi would be public record." Citi requested that the motion be denied.

119. On August 24, 2026, in two other filings in the First Action, Citi asked the court to award it fees and costs against Plaintiff under its inherent powers.

120. On August 26, 2026, Judge Barber granted the correction motion to the extent that an amended order would clarify the statements concerning Plaintiff's performance reviews and compensation.

121. The amended order stated that Plaintiff received a two on Defendant's one-to-five scale from 2022 through 2025, the second-highest rating awarded by Defendant. The amended order retained the arbitration disposition.

122. The amended order was entered twenty-one days after the August 5 order. Defendant communicated the August 18 refusals before the amended order was entered.

123. On August 27, 2026, in the Second Action, Citi moved to compel arbitration and asked the court to impose sanctions on Plaintiff. Citi stated that she filed the Second Action "solely to harass Citi with vexatious litigation."

### K. The Fund Accounting Analyst Position, Job ID 26990374

124. In late August 2026, a manager employed by Defendant contacted Plaintiff. Potential reemployment was discussed.

125. Before September 1, 2026, Plaintiff applied from Lake County for the position of Fund Accounting Analyst, Job ID 26990374. That application was separate from the manager's contact.

**The Letter Dated August 30, 2026**

126. Plaintiff prepared a letter dated August 30, 2026. The letter was addressed to Brent McIntosh, Chief Legal Officer and Corporate Secretary of Citigroup Inc.; Adam Meshel, General Counsel and Corporate Secretary of Citibank, N.A.; and Zdenek Turek, Chief Risk Officer of Citigroup Inc., at 388 Greenwich Street, New York, New York. The subject line of the letter named Citigroup Inc. and Citibank, N.A.

127. Mr. McIntosh heads Citi's Global Legal Affairs and Compliance organization, which includes Citi's Legal Department. He is a member of Citi's Executive Management Team.

128. Mr. Meshel is Citi's Global Head of Legal and the General Counsel of Defendant. He is a member of Defendant's executive management committee.

129. Mr. Turek leads Citi's Risk Management organization. He is a member of Citi's Executive Management Team.

130. On information and belief, Defendant's litigation counsel in the First Action and the Second Action acts at the direction of the Legal Department that Mr. McIntosh and Mr. Meshel head.

131. The letter stated that the Second Action alleges that Citi retaliated against Plaintiff for bringing and pursuing the First Action. It identified four requests by Citi that a court sanction Plaintiff or order her to pay Citi's fees. It stated: "I am writing to you, and not only to the lawyers."

132. The letter stated: "In late August, a Citi manager reached out to me. In the course of that contact, potential reemployment was discussed, and there may be follow-up. No interview has been scheduled. If one is offered I would sit for it, and I would welcome a role that pays me on the same terms as my peers." It stated: "Both things are happening at the same time. Someone at Citi should decide which one reflects the company's actual position."

133. The letter asked the three officers to confirm that the course being run in Citi's name in the litigation was the course Citi intended to run. It closed: "If it is, I understand it as an informed choice. If it is not, someone should know before the next filing."

**August 31, 2026**

134. On August 31, 2026, at 8:00 a.m., Plaintiff emailed the letter to Stephanie L. Adler-Paindiris and Melissa M. Castillo of Jackson Lewis P.C., Defendant's litigation counsel. The subject line of the email was "Glazman v. Citi — Correspondence for Legal and Risk."

135. Plaintiff asked counsel to transmit the letter to each of the three recipients personally and to confirm delivery by return email. She stated that she was not requesting any privileged communication, any advice provided to Citi or its personnel, or any response to the substance of the letter.

136. Plaintiff stated that if she did not receive confirmation within five business days that the letter had been delivered to the three recipients, she would transmit copies to them directly by United States mail at Citi's corporate offices.

**September 1, 2026**

137. On September 1, 2026, at 12:37 p.m., Defendant invited Plaintiff to interview for the Fund Accounting Analyst position. Plaintiff received the invitation in Lake County.

138. On September 1, 2026, at 5:52 p.m., Adler-Paindiris emailed Plaintiff in reply to the August 31 email, copying Rebecca Sallee and Melissa M. Castillo of Jackson Lewis P.C.

139. The email stated that counsel wrote "regarding your August 30, 2026, letter addressed to Brent McIntosh, Adam Meshel, and Zdenek Turek, and your stated intention in your email below to communicate with them directly."

140. The email stated: "Citi is represented by counsel in the pending litigation and arbitration. Mr. McIntosh, Mr. Meshel, Mr. Turek, and the other Citi witnesses do not consent to being contacted directly by you regarding these matters."

141. Counsel directed Plaintiff not to communicate, directly or indirectly, with those individuals or with any other current Citi employee concerning the subject matter of the pending proceedings without counsel's prior written consent.

142. Counsel stated that if Plaintiff contacted "represented Citi parties, officers, or other protected constituents" without counsel's consent, Citi reserved all rights to seek relief, "including a protective or no-contact order and any sanctions the court deems warranted." Counsel asked Plaintiff to confirm that she would comply.

143. The email stated the position of Mr. McIntosh, Mr. Meshel, and Mr. Turek on direct contact by Plaintiff. It described them as Citi witnesses. It did not state whether the letter had been delivered to them. It did not state whether any of them had read it.

**September 3, 2026**

144. On September 3, 2026, Defendant's personnel, including Minerva Miranda, interviewed Plaintiff for the Fund Accounting Analyst position. At the close of the interview, they told Plaintiff she would hear from Human Resources in approximately two weeks. Plaintiff did not discuss the litigation during the interview.

145. Following the September 1 communication, Plaintiff experienced stress concerning whether her candidacy was being considered through the recruiting process or whether a decision had already been made. That stress

continued during the September 3 interview and interfered with her concentration.

146. On September 3, 2026, at 1:45 p.m., Plaintiff emailed Adler-Paindiris in reply to the September 1 email, copying Sallee and Castillo. Plaintiff reported that Defendant had interviewed her that day and that the interviewers had told her to expect to hear from Human Resources in two weeks. She stated: "I did not discuss the litigation during the interview and will continue keeping the recruiting process separate."

147. In the same email, Plaintiff stated: "On September 1, I went from being scheduled for an interview to being warned of sanctions within a few hours. I carried that into the interview." She stated that the question whether the process "was being run in good faith or was a step toward a decision already made" stayed with her through the conversation "and took focus I would otherwise have given to it." She stated that she was recording the effect "so that Citi has notice of the effect."

148. Plaintiff stated that she was not asking litigation counsel, Legal, Risk, or anyone else to influence the hiring decision and that she wanted the ordinary recruiting process to run its course. She stated that counsel's September 1 email did not say whether any of the three officers had reviewed the letter, had asked counsel to prevent its transmission, or had authorized the position attributed to them. She stated that if Defendant took an adverse employment action after that sequence, she would evaluate it on the complete record, including the completed

interview, the pending protected activity, counsel's September 1 communication, and the knowledge and participation of the relevant decision-makers.

149. Plaintiff stated that she would not transmit the letter or counsel's September 1 communication to the three officers before September 17, 2026. She stated that the decision was "unilateral and unconditional" and that she was "not requesting any payment, concession, employment action, litigation position, or other response in exchange for the delay." She stated that the September 17 date "was fixed before the interview took place" and was not tied to the Human Resources timeline or to any employment decision.

**September 4 Through September 15, 2026**

150. On September 4, 2026, Plaintiff sent a letter from Lake County by certified mail to Citibank, N.A., Human Resources — Talent Acquisition. The letter identified the September 3, 2026 interview, the position, the Job ID, and the interviewer by name, and stated her continued interest in the position. Defendant did not respond to the letter.

151. On September 8, 2026, Plaintiff wrote again to Defendant's litigation counsel. She stated that Citi was considering her for an employment opportunity and that she expected to hear from Citi by approximately September 17, 2026. She proposed a mutual standstill of litigation activity through that date. She received no response before September 16, 2026.

152. Between September 3 and September 16, 2026, Defendant did not contact Plaintiff concerning the Fund Accounting Analyst position.

**September 16, 2026**

153. On September 16, 2026, at 11:05 a.m., Defendant's litigation counsel emailed Plaintiff a filing made that day in the Second Action. In that filing Citi addressed Plaintiff's statement that she might dismiss and refile the Second Action. Citi wrote: "Plaintiff argues that she will force Citi to expend more money if the Court does not rule as she wants or Defendants do not agree to her demands, which sounds a lot like extortion." In the same filing Citi asked the court to award it its fees and costs under its inherent powers.

154. On September 16, 2026, at 3:54 p.m., one day before the date Plaintiff had identified to counsel, Defendant notified Plaintiff that she had not been selected for the Fund Accounting Analyst position. Plaintiff received the notification in Lake County.

155. Plaintiff was qualified for the Fund Accounting Analyst position. Her background is in financial operations, reporting, and analysis. She had more than fifteen years of service with Defendant. Defendant had rated her performance a two on its one-to-five scale for four consecutive years. Defendant selected her application for interview.

**Defendant's Knowledge**

156. Before September 16, 2026, Defendant's litigation counsel knew of the First Action, Charge No. 511-2026-02539, the Second Action, and the motion to correct. Counsel had received the letter dated August 30, 2026 on August 31, 2026, and had stated the position of Mr. McIntosh, Mr. Meshel, and Mr. Turek on

September 1, 2026. Counsel knew from Plaintiff's September 3 and September 8, 2026 emails that Defendant had interviewed Plaintiff for the Fund Accounting Analyst position and that a decision was expected by about September 17, 2026. Counsel knew from Plaintiff's September 3, 2026 email that the September 1, 2026 communication had caused her stress that continued during the interview. Counsel continued to act for Citi in the Second Action through September 16, 2026.

157. Before September 16, 2026, Citibank, N.A., Human Resources — Talent Acquisition had received Plaintiff's letters of August 6 and September 4, 2026. Each letter identified her by name and employee number.

**The Direction Not to Hire**

158. On information and belief, after Plaintiff transmitted the letter dated August 30, 2026 through Defendant's litigation counsel on August 31, 2026, and before Defendant communicated the September 16, 2026 refusal, one or more of Brent McIntosh, Adam Meshel, and Zdenek Turek, acting on behalf of Citibank, N.A., directly or through other personnel, directed that Plaintiff not be hired for the Fund Accounting Analyst position, Job ID 26990374.

159. On information and belief, the executive or executives who issued that direction knew of Plaintiff's pending discrimination and retaliation proceedings against Citi and of her candidacy for that position.

**L. Dismissal of the Second Action**

160. On September 23, 2026, the court in the Second Action granted in part Citi's motion to compel arbitration, directed the parties to submit the claims asserted in that action to arbitration, stayed that action pending completion of arbitration, denied Citi's request for sanctions and expenses, and directed the Clerk to close the case.

161. On October 30, 2026, Plaintiff filed a notice of voluntary dismissal of the Second Action without prejudice under Federal Rule of Civil Procedure 41(a)(1)(A)(i).

**M. Injury**

162. Because Defendant did not select Plaintiff for the internal position described in Section D, Plaintiff lost the compensation and benefits of that position.

163. Because Defendant did not select Plaintiff for the positions described in Section F, Plaintiff lost the compensation and benefits of those positions.

164. Because Defendant refused her applications on August 18, 2026, Plaintiff lost the compensation and benefits of the positions identified in Section I.

165. Following the September 1, 2026 communication from Defendant's litigation counsel, Plaintiff experienced stress concerning whether her candidacy for the Fund Accounting Analyst position was being considered through the recruiting process or whether a decision had already been made.

166. That stress continued during the September 3, 2026 interview and interfered with Plaintiff's concentration. Plaintiff reported it to Defendant's litigation counsel the same afternoon, as described in Section K.

167. Because Defendant refused to hire her for the Fund Accounting Analyst position, Plaintiff lost the compensation and benefits of that position. She suffered additional emotional distress as a result of that refusal.

168. Plaintiff suffered emotional distress as a result of the adverse actions described in Sections C, D, E, F, and I.

169. As of September 16, 2026, Defendant had not selected Plaintiff for any position for which she applied after May 7, 2026.

## N. Administrative Predicates

170. On April 1, 2026, Plaintiff signed Charge No. 511-2026-02539. The charge was filed with the Equal Employment Opportunity Commission on April 2, 2026. The charge names Citigroup, Inc. as respondent. It alleges discrimination based on sex and age, and retaliation.

171. The Equal Employment Opportunity Commission issued a Notice of Right to Sue on Charge No. 511-2026-02539 on May 20, 2026. Plaintiff received it that day.

172. Plaintiff filed the Second Action on August 5, 2026, within 90 days after receiving that Notice.

173. Defendant made the August 18, 2026 decisions described in Section I and the September 16, 2026 decision described in Section K after Plaintiff filed

Charge No. 511-2026-02539. The First Action and the Second Action were pending when Defendant made each decision.

174. On September 18, 2026, Plaintiff filed a further charge of discrimination with the Equal Employment Opportunity Commission, EEOC Charge No. 511-2026-05403. That charge names Citigroup Inc. and Citibank, N.A. as respondents. It alleges retaliation in the refusals of August 18, 2026 and September 16, 2026.

## COUNT I

## RETALIATION
## Title VII, 42 U.S.C. § 2000e-3(a)

175. Plaintiff incorporates the Jurisdiction and Venue, Election, Parties, and Scope sections and Sections A through N of the Factual Allegations. Plaintiff does not incorporate the allegations of any other Count.

176. Plaintiff was Defendant's employee through May 7, 2026. She was an applicant for employment with Defendant from May 23, 2026 through September 16, 2026.

177. Plaintiff filed and prosecuted the First Action, including its claim that Defendant subjected her to a hostile work environment because of sex. She filed Charge No. 511-2026-02539. She filed and prosecuted the Second Action, which alleged retaliation under Title VII. She filed the motion to correct described in Section G. On August 31, 2026, she transmitted through Defendant's litigation counsel the letter dated August 30, 2026, described in Section K, which stated that

Defendant had retaliated against her for bringing and pursuing the First Action. On September 3, 2026, she wrote to Defendant's litigation counsel, as described in Section K, reported the effect of counsel's September 1, 2026 communication, and stated that any adverse employment decision would be evaluated in light of her pending protected activity.

178. Defendant knew of the First Action and of Charge No. 511-2026-02539 when it took the actions described in Paragraph 179(a) through (e), through the service of process, appearance, and filings described in Section B and the correspondence described in Section F. Defendant knew of the First Action, the charge, the Second Action, and the motion to correct when it took the action described in Paragraph 179(f), through the service of process, filings, and correspondence described in Sections B and H. Defendant knew of those proceedings and of the letter dated August 30, 2026 when its litigation counsel sent the September 1, 2026 communication described in Paragraph 179(g). Defendant knew of those proceedings, of that letter, and of Plaintiff's September 3 and September 8, 2026 notices when it refused to hire her on September 16, 2026, as described in Paragraph 179(h).

179. Defendant took the following materially adverse actions against Plaintiff:

a. On April 7, 2026, Defendant tendered the Separation Agreement conditioning separation pay on the inaccurate representation described in Section C.

b. In April 2026, after recruiting and interviewing Plaintiff for the internal position described in Section D, Defendant did not select her and selected a male candidate.

c. On May 11, 2026, Defendant tendered the revised Separation Agreement conditioning payment on dismissal of the First Action with prejudice, as described in Section E.

d. As to certain of the positions described in Section F, Defendant notified Plaintiff that her candidacy would not proceed. Defendant did not interview or select her for any position described in Section F.

e. As to the remaining positions described in Section F, Defendant provided no substantive response to Plaintiff's applications or to her June 3, 2026 letter.

f. On August 18, 2026, Defendant refused her applications for COB & CM Senior Analyst, Job ID 26964430, and Model Analytics Validation Senior Analyst Assistant Vice President, Job ID 26940044.

g. On September 1, 2026, through its litigation counsel, Defendant directed Plaintiff not to communicate, directly or indirectly, with Mr. McIntosh, Mr. Meshel, Mr. Turek, or any other current Citi employee concerning the subject matter of the pending proceedings without counsel's prior written consent, and stated that Citi reserved the right to seek a protective or no-contact order and sanctions if she contacted the identified represented constituents without consent, as described in Section K.

h. On September 16, 2026, Defendant refused to hire her for the Fund Accounting Analyst position, Job ID 26990374.

180. Defendant took the actions described in Paragraph 179(a) through (e) because Plaintiff filed and prosecuted the First Action and filed Charge No. 511-2026-02539. The April 7, 2026 agreement was tendered 22 days after the First Action was filed and required a representation that no proceeding had been filed. The May 11, 2026 agreement was tendered six days after Defendant moved to compel arbitration of the First Action, named the First Action by case number, and conditioned payment on its dismissal with prejudice. Defendant declined or did not advance the applications of a fifteen-year former employee whom its own personnel had recruited in April 2026, after written notice of those applications to Human Resources and to litigation counsel.

181. Defendant took the actions described in Paragraph 179(f) because Plaintiff filed and prosecuted the First Action, filed Charge No. 511-2026-02539, filed the Second Action, and served the motion to correct. The August 18, 2026 refusals came thirteen days after the Second Action was filed, twelve days after Citi was served with it, and eleven days after Defendant's litigation counsel received the motion to correct, the declaration, and the August 6, 2026 letter identifying the applications.

182. Defendant imposed the September 1, 2026 restriction and warning described in Paragraph 179(g) because Plaintiff prosecuted her Title VII claims

and sought to communicate her retaliation objections to the officers who head Citi's Legal and Risk functions, as described in Section K.

183. Defendant took the action described in Paragraph 179(h) because Plaintiff filed and prosecuted the First Action and the Second Action, filed Charge No. 511-2026-02539, filed the motion to correct, and transmitted the letter dated August 30, 2026. On information and belief, after that letter was transmitted on August 31, 2026, one or more of Mr. McIntosh, Mr. Meshel, and Mr. Turek, acting on behalf of Defendant and with knowledge of those proceedings and of Plaintiff's candidacy, directed that Plaintiff not be hired for the Fund Accounting Analyst position, and Defendant's personnel implemented that direction by the September 16, 2026 refusal. Defendant communicated that refusal sixteen days after its litigation counsel received the letter and on the same day Citi asked the court in the Second Action to award it its fees and costs, as described in Paragraphs 153, 154, 156, and 158.

184. Defendant would not have taken the actions described in Paragraph 179 but for Plaintiff's protected activity.

185. Defendant acted with malice. Alternatively, Defendant acted with reckless indifference to Plaintiff's federally protected rights. Defendant's litigation counsel knew of Plaintiff's pending Title VII proceedings when counsel sent the September 1, 2026 communication. On information and belief, the executive or executives who directed that Plaintiff not be hired knew of those proceedings when they issued that direction.

186. As a direct and proximate result of the actions described in Paragraph 179(a) through (f), Plaintiff lost compensation, employment, and employment benefits and suffered emotional distress. As a direct and proximate result of the September 1, 2026 communication described in Paragraph 179(g), Plaintiff experienced the stress described in Section M, which continued during the September 3, 2026 interview. As a direct and proximate result of the September 16, 2026 refusal described in Paragraph 179(h), Plaintiff lost the compensation and benefits of the Fund Accounting Analyst position and suffered additional emotional distress. Plaintiff suffered other economic and non-economic damages.

## COUNT II

## SEX DISCRIMINATION — FAILURE TO HIRE
## Title VII, 42 U.S.C. § 2000e-2(a)(1)

187. Plaintiff incorporates the Jurisdiction and Venue, Election, Parties, and Scope sections, Sections A, B, D, and N of the Factual Allegations, and Paragraph 162 of Section M. Plaintiff does not incorporate the allegations of any other Count.

188. Plaintiff is a woman.

189. Defendant's personnel recruited Plaintiff for the internal position described in Section D. Plaintiff did not solicit the recruitment. Defendant interviewed her for the position on April 23, 2026.

190. Plaintiff was qualified for the position.

191. Defendant did not select Plaintiff for the position. Defendant selected a male candidate.

192. Defendant selected the male candidate over Plaintiff because of Plaintiff's sex.

193. As a direct and proximate result of that selection, Plaintiff lost compensation, employment, and employment benefits. She suffered emotional distress and other economic and non-economic damages.

**COUNT III**

**RETALIATION**
**Fair Labor Standards Act, 29 U.S.C. § 215(a)(3)**

194. Plaintiff incorporates the Jurisdiction and Venue, Election, Parties, and Scope sections and Sections B, C, D, E, F, G, H, I, J, K, and M of the Factual Allegations. Plaintiff does not incorporate the allegations of any other Count.

195. Plaintiff was Defendant's employee on March 16, 2026, when she instituted the First Action. The First Action asserts claims under 29 U.S.C. § 206(d) and 29 U.S.C. § 215(a)(3). Plaintiff prosecuted those claims after March 16, 2026, including by the motion to correct described in Section G. The Second Action asserted a claim under 29 U.S.C. § 215(a)(3). In the letter dated August 30, 2026 to Mr. McIntosh, Mr. Meshel, and Mr. Turek, transmitted through Defendant's litigation counsel on August 31, 2026, Plaintiff stated that she "would welcome a role that pays me on the same terms as my peers."

196. Defendant knew of the First Action, including its claims under 29 U.S.C. § 206(d) and 29 U.S.C. § 215(a)(3), when it took the actions described in Paragraph 197(a) through (e), through the service of process, appearance, and filings described in Section B and the correspondence described in Section F. Defendant knew of the First Action, the Second Action, and the motion to correct when it took the action described in Paragraph 197(f), through the service of process, filings, and correspondence described in Sections B and H. Defendant knew of those proceedings, of the letter dated August 30, 2026 and the statement in it, and of Plaintiff's September 3 and September 8, 2026 notices when it took the action described in Paragraph 197(g), through the correspondence described in Section K.

197. Defendant discriminated against Plaintiff by the following actions:

a. On April 7, 2026, Defendant tendered the Separation Agreement described in Section C.

b. In April 2026, Defendant did not select Plaintiff for the internal position described in Section D.

c. On May 11, 2026, Defendant tendered the revised Separation Agreement described in Section E.

d. As to certain of the positions described in Section F, Defendant notified Plaintiff that her candidacy would not proceed. Defendant did not interview or select her for any position described in Section F.

e. As to the remaining positions described in Section F, Defendant provided no substantive response.

f. On August 18, 2026, Defendant refused her applications for the positions identified in Section I.

g. On September 16, 2026, Defendant refused to hire her for the Fund Accounting Analyst position, Job ID 26990374.

198. Defendant took the actions described in Paragraph 197(a) through (e) because Plaintiff instituted and prosecuted the Equal Pay Act claim in the First Action. The April 7, 2026 agreement required a representation that no proceeding had been filed. The May 11, 2026 agreement, tendered six days after Defendant moved to compel arbitration of the First Action, named the First Action by case number and conditioned payment on dismissal with prejudice of the claims asserted in it, including the Equal Pay Act claim.

199. Defendant took the action described in Paragraph 197(f) because Plaintiff instituted and prosecuted the Equal Pay Act claim in the First Action, instituted the Second Action, and served the motion to correct. The August 18, 2026 refusals came thirteen days after the Second Action was filed and eleven days after Defendant's litigation counsel received the motion to correct and the August 6, 2026 letter identifying the applications.

200. Defendant took the action described in Paragraph 197(g) because Plaintiff instituted and continued prosecuting the claims under 29 U.S.C. § 206(d) and 29 U.S.C. § 215(a)(3) in the First Action and the claim under 29 U.S.C. §

215(a)(3) in the Second Action, and made the statement described in Paragraph 195. On information and belief, after Plaintiff transmitted the letter dated August 30, 2026, one or more of Mr. McIntosh, Mr. Meshel, and Mr. Turek, acting on behalf of Defendant and with knowledge of those proceedings, directed that Plaintiff not be hired for the Fund Accounting Analyst position, and Defendant's personnel implemented that direction by the September 16, 2026 refusal. Defendant communicated that refusal on the same day Citi asked the court in the Second Action to award it its fees and costs, as described in Paragraphs 153, 154, and 158.

201. Defendant would not have taken the actions described in Paragraph 197 but for the proceedings Plaintiff instituted and prosecuted and the statement she made.

202. As a direct and proximate result, Plaintiff lost compensation, employment, and employment benefits.

**COUNT IV**

**RETALIATION**
**Age Discrimination in Employment Act, 29 U.S.C. § 623(d)**

203. Plaintiff incorporates the Jurisdiction and Venue, Election, Parties, and Scope sections and Sections B, G, H, I, J, K, M, and N of the Factual Allegations. Plaintiff does not incorporate the allegations of any other Count.

204. Plaintiff was at least 40 years old when Defendant communicated the August 18, 2026 and September 16, 2026 refusals. She was an applicant for employment with Defendant on each of those dates.

205. The First Action asserts a claim of age discrimination under 29 U.S.C. § 623(a)(1). Charge No. 511-2026-02539 alleges discrimination based on age.

206. Defendant knew of the First Action and of Charge No. 511-2026-02539 when it communicated each refusal, through the service of process, appearance, and filings described in Section B. Defendant knew of Plaintiff's pending applications through the correspondence described in Sections H and K. Before the September 16, 2026 refusal, Defendant also knew, through the correspondence described in Section K, of the letter dated August 30, 2026 and of Plaintiff's September 3 and September 8, 2026 notices that the hiring decision was pending.

207. Defendant discriminated against Plaintiff. On August 18, 2026, it refused her applications for the positions identified in Section I. On September 16, 2026, it refused to hire her for the Fund Accounting Analyst position, Job ID 26990374.

208. Defendant took those actions because Plaintiff made that charge and prosecuted the age-discrimination claim in the First Action. The August 18, 2026 refusals came eleven days after Defendant's litigation counsel received her motion to correct in the First Action and her letter identifying the applications. On information and belief, after Plaintiff transmitted the letter dated August 30,

2026, one or more of Mr. McIntosh, Mr. Meshel, and Mr. Turek, acting on behalf of Defendant and with knowledge of Charge No. 511-2026-02539 and the First Action, directed that Plaintiff not be hired for the Fund Accounting Analyst position, and Defendant's personnel implemented that direction by the September 16, 2026 refusal. Defendant communicated that refusal on the same day Citi asked the court in the Second Action to award it its fees and costs, as described in Paragraphs 153, 154, and 158.

209. Defendant would not have taken those actions but for that protected activity.

210. Defendant knew that refusing to hire Plaintiff because of her age-discrimination charge and litigation violated the Age Discrimination in Employment Act. Alternatively, Defendant acted with reckless disregard for whether it did.

211. As a direct and proximate result, Plaintiff lost compensation, employment, and employment benefits.

**COUNT V**

**RETALIATION**
**Florida Private Sector Whistleblower Act, Fla. Stat. § 448.102(3)**

212. Plaintiff incorporates the Jurisdiction and Venue, Election, Parties, and Scope sections and Sections A, B, C, D, E, F, and M of the Factual Allegations. Plaintiff does not incorporate the allegations of any other Count.

213. Plaintiff was Defendant's employee through May 7, 2026.

214. Defendant engaged in the following practices. Defendant paid Plaintiff below the published median for her classification while paying her male colleagues in the same classification at or above the median, as described in Section A, in violation of 29 U.S.C. § 206(d) and 42 U.S.C. § 2000e-2(a)(1). Defendant assigned Plaintiff recurring corrective work not assigned to any male colleague, without additional compensation, as described in Section A, in violation of 42 U.S.C. § 2000e-2(a)(1). Defendant selected Plaintiff's position for elimination while retaining her male teammates in the same job family and C-level designation, as described in Section A, in violation of 42 U.S.C. § 2000e-2(a)(1). Defendant conditioned separation pay on Plaintiff's execution of the inaccurate representation described in Section C after she had filed the First Action and Charge No. 511-2026-02539, in violation of 42 U.S.C. § 2000e-3(a) and 29 U.S.C. § 215(a)(3).

215. Plaintiff objected to, and refused to participate in, those practices. She filed and prosecuted the First Action. She filed Charge No. 511-2026-02539. She refused to execute the April 7, 2026 Separation Agreement.

216. Defendant took the following retaliatory personnel actions against Plaintiff:

a. On April 7, 2026, Defendant tendered the Separation Agreement described in Section C.

b. In April 2026, Defendant did not select Plaintiff for the internal position described in Section D.

c. On May 11, 2026, Defendant tendered the revised Separation Agreement described in Section E.

d. Defendant notified Plaintiff that her candidacy would not proceed for certain of the positions described in Section F, provided no substantive response as to the remaining positions, and did not interview or select her for any of them.

217. Defendant tendered the April 7, 2026 Separation Agreement described in Paragraph 216(a) because Plaintiff filed and prosecuted the First Action and filed Charge No. 511-2026-02539. Defendant took the actions described in Paragraph 216(b) through (d) because Plaintiff filed and prosecuted the First Action, filed Charge No. 511-2026-02539, and refused to execute the April 7, 2026 Separation Agreement.

218. As a direct and proximate result, Plaintiff lost compensation, employment, and employment benefits, and suffered other damages.

**PRAYER FOR RELIEF**

Plaintiff requests that the Court enter judgment in her favor and against Defendant, and award the following relief:

A. Back pay and lost benefits arising from Defendant's non-selection of Plaintiff for the internal position described in Section D; for the positions described in Section F as to which Defendant declined or failed to advance her candidacy; for the positions refused on August 18, 2026; and for the Fund Accounting Analyst position refused on September 16, 2026;

B. Prejudgment interest on back pay and lost benefits, to the extent permitted by law;

C. Instatement into the Fund Accounting Analyst position, Job ID 26990374, or a substantially equivalent position, or front pay in lieu of instatement;

D. Under Count I, compensatory damages under 42 U.S.C. § 1981a for the emotional distress and other non-economic harm resulting from the conduct challenged in that Count, including the stress following the September 1, 2026 communication and the emotional distress resulting from the September 16, 2026 refusal; and under Count II, compensatory damages under 42 U.S.C. § 1981a for the emotional distress and other non-economic harm resulting from the April 2026 non-selection;

E. Under Counts I and II, punitive damages under 42 U.S.C. § 1981a(b)(1);

F. Under Count III, legal and equitable relief under 29 U.S.C. § 216(b), including an additional equal amount as liquidated damages;

G. Under Count IV, liquidated damages under 29 U.S.C. § 626(b) for Defendant's willful violation;

H. Under Count V, the relief authorized by Fla. Stat. § 448.103;

I. A permanent injunction prohibiting Defendant from retaliating against Plaintiff for her protected activity;

J. A determination under 9 U.S.C. § 402(b) that no predispute arbitration agreement or predispute joint-action waiver is valid or enforceable with respect to this case;

L. Postjudgment interest;

M. Reasonable attorney's fees to the extent permitted by law, should counsel appear for Plaintiff; and

N. Such other relief as the Court deems just.

Plaintiff seeks no duplicate recovery for the same lost compensation, for positions she could not have held simultaneously, or for the same injury under more than one statute.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 30, 2026

Respectfully submitted,

Yuliya Glazman
Plaintiff, *pro se*
2110 Thousand Trails Blvd
Clermont, FL 34714
(407) 794-6503
yglazman@protonmail.com

K. Costs of this action;