**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**YULIYA GLAZMAN,**

**Plaintiff,**

**v.** **Case No. 6:26-CV-02555-PGB-CAB**

**CITIBANK, N.A.,**

**Defendant.**

---

**DEFENDANT CITIBANK, N.A.'S MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**

Defendant Citibank, N.A. (collectively, "Citi"), by and through undersigned counsel and pursuant to 9 U.S.C. §§ 3 and 4, move to compel arbitration and stay this action. In support, Citi states as follows:

## I. INTRODUCTION

Plaintiff's claims are subject to a written Employment Arbitration Policy requiring arbitration of covered employment disputes. Within the last three months, the Court has twice compelled Plaintiff to arbitrate claims arising from the same employment relationship and has twice rejected her contention that the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (the "EFAA") renders the Arbitration Policy unenforceable. *Glazman v. Citigroup, Inc.*, No. 8:26-cv-01522, Doc. 71 (M.D. Fla. Aug. 26, 2026) (the "August 26, 2026 Order"); *Glazman v. Citigroup, Inc.*, No. 8:26-cv-02265, Doc. 33 (M.D. Fla. Sept. 23, 2026) (the "September

23, 2026 Order"). In both actions, the Court held that Plaintiff's allegations of disparate pay and working conditions did not plausibly allege conduct constituting sexual harassment. Notably, the September 23, 2026 Order further cautioned Plaintiff against filing *another action* that repackaged claims arising from the same facts, transactions, or occurrences.

On October 30, 2026, Plaintiff voluntarily dismissed the Second Action and filed the instant action, which reasserts the claims previously ordered to arbitration and adds an ADEA retaliation claim arising from the same employment relationship. Plaintiff again erroneously attempts to invoke the EFAA based on her mischaracterization of the earlier dispute as one involving sexual harassment, although the Court has already rejected that characterization on materially similar allegations.

Because each claim falls within the Arbitration Policy and the Complaint does not plausibly allege a sexual-harassment or sexual-assault dispute, Citi respectfully requests that the Court compel arbitration and stay this action under 9 U.S.C. §§ 3 and 4. Citi further requests the additional relief addressed below based on Plaintiff's deliberate filing of this action notwithstanding the Court's express written warning.

## PROCEDURAL BACKGROUND

### I. The First Action – 8:26-cv-1522-TPB-AEP (M.D. Fla. 2026) (the "First Action")

After learning that her position would be eliminated, but before her employment ended, Plaintiff filed suit on March 16, 2026, alleging disparate treatment and unequal pay based on sex and age, as well as retaliation relating to her requests for a compensation review under the Equal Pay Act, Title VII, the ADEA, the FCRA, and the Florida Private Whistleblower Act. Plaintiff labeled one count "Hostile Work Environment Based on Sex," but the supporting allegations concerned disparate pay and assignments based on sex. Plaintiff later filed an EEOC charge alleging pay discrimination and disparate working conditions based on sex. *See* Exhibit 1 filed with this Motion.

Citi moved to compel arbitration on May 5, 2026[1], arguing that Plaintiff did not plausibly state a claim for sexual harassment and that her lawsuit was not exempt from

[1] Claimant first filed a complaint in the Middle District of Florida, Orlando Division, 6:26-cv-00555-CEM-NWH (M.D. Fla. March 16, 2026) ("00555"). Defendant moved to dismiss and compel arbitration on April 8, 2026 (00555, Doc. 10). The Court issued an Order to Show Cause why the case should not be transferred to the Ocala Division as Plaintiff lived in that division and previously worked in Tampa. On April 24, 2026, Plaintiff filed an Amended Complaint (00555, Doc. 22) and a Motion to Transfer Venue to the Tampa Division (00555, Doc. 25). Before the Court transferred the case, Defendant again filed a Motion to Dismiss and Compel Arbitration based on Plaintiff's Amended Complaint (Doc. 29). On May 18, 2026, Judge Carlos Mendoza granted Plaintiff's unopposed Motion to Transfer Venue and transferred the case to the Middle District of Florida Tampa Division (Doc. 32). The case was transferred to Tampa by order dated May 20, 2026 (00555, Doc. 35). Upon transfer, the Court assigned the new number 26-cv-01522 and assigned the case to Judge Thomas Barber. (01522, Doc. 35). Ultimately, on August 18, 2026, Judge Barber ruled on the Motion to Dismiss and Compel Arbitration in 01522, Doc. 54. Plaintiff filed several motions including a motion for reconsideration, motion to amend the Court's order, and a motion to correct clerical errors. Ultimately, Judge Barber issued an Amended Order granting Defendant's Motion to Compel Arbitration on August 26, 2026 and directed the Clerk to stay and administratively close the case. (01522, August 26, 2026 Order)

arbitration under the EFAA. 01522, Doc. 29. The Court granted Citi's Motion to Compel and issued an initial Order on August 5, 2026, and an Amended Order on August 26, 2026 (01522, Docs. 54 & 71), finding that the EFAA did not exempt the case from arbitration and ordering the Parties to arbitration in accordance with the terms of their valid arbitration agreement. On August 7, 2026, Plaintiff sent Citi a Demand for Arbitration in relation to Docket 01522. Plaintiff's Demand is pending before AAA Arbitrator Daniel Levine.

**II. The Second Action – 8:26-cv-2265 (M.D. Fla. 2026) (the "Second Action")**

On August 5, 2026, *the same day the Court compelled arbitration in 01522*, Plaintiff filed a second lawsuit against Citi captioned *Glazman v. Citigroup, Inc.*, No. 8:26-cv-02265-TPB-SPF (M.D. Fla. 2026) ("02265"), alleging gender discrimination and retaliation based on Defendant's non-selection of Plaintiff for several jobs and asserting a count of "Retaliation for Asserting and Prosecuting a Sexual Harassment Dispute." *See* 02265, Doc. 1. Plaintiff once again erroneously attempted to invoke the EFAA. She made the same argument in the Second Action that she raised previously and lost. Once again, Defendant moved to compel arbitration (02265, Doc. 14). On September 23, 2026, the Court issued an Order, granting Defendant's motion to compel arbitration and finding specifically that the EFAA did *not* apply. *See* 02265, September 23, 2026 Order. In his Order, Judge Barber wrote:

> Plaintiff should not interpret the Court's denial of Defendants' present request for sanctions as permission to continue filing new actions in an effort to avoid arbitration. Plaintiff is advised that she may not evade the Court's

> Orders by filing another action that merely repackages claims arising from the same facts, transactions, or occurrences in *Glazman I* or this action. **If Plaintiff files another frivolous or duplicative action based on those matters, she may be subject to sanctions, including monetary sanctions, under Federal Rule of Civil Procedure 11 or the Court's inherent authority. Continued frivolous, duplicative, or vexatious filings may also result in an entry of an injunction restricting Plaintiff's ability to initiate future actions.** Plaintiff is further advised that her *pro se* status does not excuse compliance with the Federal Rules of Civil Procedure or orders of this Court.

02265, September 23, 2026 Order (emphasis in original).

One week later, Plaintiff voluntarily dismissed the Second Action without prejudice on October 30, 2026. 02265, Doc. 35. She then initiated a third lawsuit against Citi, filing the Complaint presently before this Court, reasserting the claims from the Second Action and adding an ADEA retaliation claim.

**III. The Instant Lawsuit – 6:26-cv-02555 (M.D. Fla. 2026) (the "Instant Lawsuit")**

The Complaint alleges that Citi did not select Plaintiff for several positions because of her sex and protected activity. In a section titled "Election Pursuant to 9 U.S.C. §§ 401-402," Plaintiff characterizes the sex-differentiated working conditions alleged in the First Action as a hostile work environment and asserts that the adverse actions alleged here occurred because she pursued that dispute. Complaint at 4-5. The Complaint, however, alleges non-selection, compensation disparities, differing assignments, and retaliation based on her First Action (which was already found not

to be one alleging sexual harassment or sexual assault), not conduct plausibly constituting sexual harassment or sexual assault.

## FACTUAL BACKGROUND

### I. Plaintiff's Employment History

Plaintiff was employed by Citibank, N.A. until May 7, 2026. Complaint ¶ 6. During her employment, Plaintiff questioned her compensation. *Id.* ¶ 20. On March 4, 2026, Citi notified Plaintiff that her position would be eliminated effective May 7, 2026. *Id.* ¶ 52. Plaintiff has since become reemployed with Citibank, N.A. as of November 2, 2026.

### II. The Arbitration Agreement

On July 3, 2025, Plaintiff acknowledged receipt of the 2025 U.S. Citi Handbook. In pertinent part, Plaintiff's "2025 U.S. Employee Handbook Acknowledgment" ("Acknowledgement"), states:

> **I UNDERSTAND THAT BY ACKNOWLEDGING RECEIPT OF THE 2025 U.S. HANDBOOK AND THE EMPLOYMENT ARBITRATION POLICY, I AM WAIVING ANY RIGHT I MAY HAVE UNDER THE LAW TO BRING EMPLOYMENT-RELATED DISPUTES, WHETHER INITIATED BY ME OR BY CITI, IN FEDERAL OR STATE COURT, OR TO HAVE ANY EMPLOYMENT-RELATED DISPUTE HEARD BY A JURY.** I UNDERSTAND THAT THIS WAIVER OF RIGHTS COVERS ALL TYPES OF EMPLOYMENT- RELATED DISPUTES AS DESCRIBED IN THE ARBITRATION POLICY. I UNDERSTAND THAT I WILL INSTEAD BE REQUIRED TO SUBMIT ALL SUCH EMPLOYMENT-RELATED DISPUTES FOR FINAL AND BINDING DECISION BY AN ARBITRATOR.

> **WITH THE EXCEPTION OF THE EMPLOYMENT ARBITRATION POLICY, WHICH IS A STANDALONE AGREEMENT CONTAINED IN APPENDIX A, AND IS A BINDING CONTRACT REQUIRING ME TO ARBITRATE ALL EMPLOYMENT- RELATED DISPUTES**, I UNDERSTAND THAT NOTHING CONTAINED IN THIS HANDBOOK, NOR THE HANDBOOK ITSELF, IS CONSIDERED A CONTRACT OF EMPLOYMENT. . .

Exhibit 2, Declaration of Sandrina Wilson, ¶¶5-6 ("Wilson Dec.") (emphasis added).

Plaintiff also acknowledged in writing that she was obliged to carefully review the Handbook and that she agreed to submit to arbitration in the event of an employment-related dispute, as stated below:

> **I understand that appended to this Handbook is an Employment Arbitration Policy that requires me and Citi to submit employment-related disputes to binding arbitration** (see Appendix A). **I understand that it's my obligation to read these documents carefully.** I also understand that no provision in this Handbook or elsewhere is intended to constitute a waiver, nor be construed to constitute a waiver, of my or Citi's right to compel arbitration of employment-related disputes.

Wilson Decl., ¶6, Ex. B (emphasis added)

"The Employment Arbitration Policy," Appendix A (the "Arbitration Policy"), is governed by the Federal Arbitration Act (Title 9 U.S.C.) ("FAA"). Relevant here, the "Scope of Policy" establishes:

> **This Employment Arbitration Policy applies to both [Plaintiff] and to Citi, and makes arbitration the required and exclusive forum for the resolution of all covered employment-related disputes (i.e., other than disputes which are expressly excluded from this Policy as described below) between you and Citi** (including Citi's predecessors, successors and assigns, its current, former, and future parents, subsidiaries and affiliates and its and their current, former, and future officers, directors, employees and

> agents). However, this Policy doesn't create a legal claim where one does not otherwise exist under law. **Therefore, by acknowledging receipt of this Policy and/or continuing your employment with Citi after this Policy is distributed, you are accepting the Policy and waiving any legal right you may have to bring your employment-related disputes in court and/or to have your disputes heard by a jury.**

Wilson Decl. ¶4 ("Ex. A") (emphasis added).

The Arbitration Policy, agreed to by Plaintiff with proper consideration,[2] outlines the type of "disputes" subject to the Policy, as follows:

> Subject to the remainder of this Section, these disputes include, without limitation, claims, demands or actions under **Title VII of the Civil Rights Act of 1964 ("Title VII")**, the Civil Rights Acts of 1866 and 1991, **the Age Discrimination in Employment Act of 1967**, the Older Workers Benefit Protection Act of 1990, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, **the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963,** the Employee Retirement Income Security Act of 1974, the Worker Adjustment and Retraining Notification Act, and all amendments thereto, **and any other federal, state or local statute, regulation or common-law doctrine regarding employment, employment discrimination, the terms and conditions of employment, termination of employment**, compensation, breach of contract, defamation, or retaliation, or any claims arising under or related to the Citigroup Separation Pay Plan.

Wilson Decl., ¶4, Ex. A (emphasis added).

[2] The Arbitration Policy states, "eligibility and consideration for merit increases, incentive and retention awards, equity awards, or the payment of any other compensation to you, as well as your acceptance of employment with Citi, or your continued employment with Citi after this Policy is distributed, shall constitute consideration for and assent to your obligations under this Policy." (Wilson Decl., Ex. A, p. 1)

## III. The Instant Lawsuit (02555)

The Complaint in this case (02555) asserts five counts: retaliation under Title VII (Count I), sex discrimination for failure to hire under Title VII (Count II), retaliation under the FLSA (Count III), retaliation under the ADEA (Count IV); and retaliation under the Florida Private Whistleblower Act (Count V). Per Plaintiff, "this action combines the claims pleaded in the Second Action" with additional claims that arose after she filed the Second Action. Complaint, ¶8. As in the Second Action, Plaintiff's claims concern her non-selection for several positions she applied to after her position was eliminated. *See* Complaint. Plaintiff's Complaint is devoid of any factual allegations concerning a sexual harassment dispute nor is her retaliation claim related to a complaint of sexual harassment or sexual assault. *See id.*

The timing and substance of this action are material. Plaintiff filed it just days after the Court compelled arbitration in the Second Action and expressly warned against filing another action repackaging claims arising from the same facts, transactions, or occurrences. The Complaint again advances the EFAA theory that the Court already rejected in the two prior actions.

Because all claims asserted in the Complaint fall within the parties' enforceable Arbitration Policy and no statutory exception applies, the Court should compel arbitration and stay this action pursuant to 9 U.S.C. §§ 3 and 4.

## ARGUMENT

**I. The EFAA Does Not Apply Because Plaintiff Has Not *Plausibly* Alleged She Was Retaliated Against *in Relation to a Sexual Harassment Dispute*.**

The EFAA permits a person alleging conduct constituting a sexual-harassment or sexual-assault dispute to elect that a pre-dispute arbitration agreement not be enforced as to a case relating to that dispute. 9 U.S.C. § 402(a). A "sexual harassment dispute" must relate to conduct alleged to constitute sexual harassment under applicable law. 9 U.S.C. § 401(4). Accordingly, the party invoking the EFAA must plausibly allege conduct constituting sexual harassment under federal pleading standards. *See Mitchell v. Raymond James & Assocs., Inc.*, No. 8:23-cv-2341-VMC-TGW, 2024 U.S. Dist. LEXIS 151960, at *15 (M.D. Fla. Aug. 23, 2024), recommendation adopted, 2024 U.S. Dist. LEXIS 170856, at *6 (M.D. Fla. Sept. 23, 2024).

The Complaint does not meet that standard. Plaintiff alleges unequal pay, differing assignments, non-selection for positions, and retaliation for pursuing her earlier lawsuit and EEOC charge. Those allegations may describe disparate treatment or retaliation, but they do not plausibly allege sexual conduct, sexual propositions, sexual comments, unwanted touching, or other conduct constituting sexual harassment. The EFAA therefore does not render the Arbitration Policy unenforceable as to the instant action.

The Court reached the same conclusion in the First and Second Actions. There, as here, Plaintiff's use of the labels "hostile work environment" and "sexual harassment dispute" did not substitute for factual allegations plausibly constituting sexual

harassment. *See* August 26, 2026 Order at 7-9; September 23, 2026 Order at 5-7. The same reasoning applies to Plaintiff's renewed EFAA theory in the instant action.

**II. Federal Law Requires the Court to Enforce a Valid Arbitration Agreement.**

The FAA governs arbitration agreements, including those contained in private employment contracts. *See* 9 U.S.C. § 2; *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001) (the FAA governs arbitration clauses in employment contracts other than those for transportation workers); *see Martinez v. Symbotic, LLC*, No. 5:25-cv-706-WWB-PRL, 2026 LX 69782, at *4 (M.D. Fla. Mar. 4, 2026). The FAA provides that arbitration agreements are "valid, irrevocable, and enforceable, [] upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Congress enacted the FAA to dispel judicial hostility towards arbitration and "to place arbitration agreements on the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991). The Supreme Court has also explained the FAA "establishes 'a liberal federal policy favoring arbitration agreements.'" *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 138 S. Ct. 1612, 1621, 200 L. Ed. 2d 889 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)).

Upon finding that a dispute is subject to a binding arbitration agreement, the FAA mandates courts to compel arbitration of the dispute. 9 U.S.C. § 4 ("[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.") (emphasis added);

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625-26, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985) (requiring courts to "rigorously enforce agreements to arbitrate"). This standard is readily met here, thereby requiring the Court to compel arbitration.

**III. The Court Should Enforce the Existing Valid Arbitration Agreement Entered into by the Parties.**

In deciding whether to compel arbitration, the Court considers whether: (1) a valid written agreement to arbitrate exists; (2) the dispute falls within its scope; and (3) the party seeking arbitration waived that right. *See Martinez v. Symbotic, LLC*, No. 5:25-cv-706-WWB-PRL, 2026 U.S. Dist. LEXIS 69782, at *5 (M.D. Fla. Mar. 4, 2026). The first two requirements are satisfied, and Citi has not waived its right to arbitrate.

**1. <u>Existence of a Valid Written Agreement to Arbitrate.</u>**

Plaintiff agreed, in writing, to arbitrate employment-related disputes that may arise out of her employment with Defendant. "[A]rbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 67, 139 S. Ct. 524, 202 L. Ed. 2d 480 (2019). Under the FAA, "a written arbitration agreement is 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (quoting 9 U.S.C. § 2). Courts must apply ordinary state-law principles that govern the formation of contracts when determining whether a valid agreement to arbitrate exists. *See Vaughan v. Athena Bitcoin, Inc.*, No. 25-25141-CV, 2026 LX 111157, at *5 (S.D. Fla.

Mar. 24, 2026) (citing *Osterer v. Bam Trading Servs. Inc.*, 753 F. Supp. 3d 1289, 1294 (S.D. Fla. 2024)). A "district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if there is no genuine dispute as to any material fact concerning the formation of such an agreement." *Id.* (citing *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016)).

Citi and Plaintiff entered into a valid agreement to arbitrate. Wilson Decl., ¶¶5-6, Ex. B. The Arbitration Policy provides that it "applies to both [Plaintiff] and to Citi" and that it "makes arbitration the required and exclusive forum for the resolution of all employment-related disputes." *Id.* During Plaintiff's employment with Defendant Citibank, N.A., she acknowledged receipt of Defendant's 2025 U.S. Citi Handbook and agreed to submit to arbitration in the event of an employment-related dispute. *Id.* Plaintiff also acknowledged that she was obliged to carefully review the Handbook before agreeing to submit to arbitration, as stated below:

> **I understand that appended to this Handbook is an Employment Arbitration Policy that requires me and Citi to submit employment-related disputes to binding arbitration** (see Appendix A). **I understand that it's my obligation to read these documents carefully.** I also understand that no provision in this Handbook or elsewhere is intended to constitute a waiver, nor be construed to constitute a waiver, of my or Citi's right to compel arbitration of employment-related disputes.

*Id.* Plaintiff had the opportunity to carefully review the Arbitration Policy and agreed to it by continuing to work for Citi. Plaintiff received consideration in the form of continued employment with Defendant Citibank, N.A. as well as "eligibility and consideration for merit increases, incentive and retention awards, equity awards, or

the payment of any other compensation." Wilson Decl., Ex. A, p. 1. Therefore, the Arbitration Policy should be considered a valid and enforceable arbitration agreement under Florida law, as there is no evidence of unconscionability[3] that would render the agreement void.

**2. <u>Existence of an Arbitrable Issue.</u>**

Each claim falls squarely within the Arbitration Policy's express scope. The Policy covers claims under Title VII, the ADEA, the FLSA, and federal, state, or local laws concerning employment discrimination, compensation, termination, and retaliation. Wilson Decl. ¶ 4, Ex. A. Counts I through V arise from Plaintiff's employment with Citi and therefore, must be arbitrated.

**3. <u>The Right to Arbitrate Has Not Been Waived.</u>**

Citi has not waived arbitration. It filed this Motion in lieu of answering the Complaint and has not substantially invoked the litigation process inconsistently with its arbitration right. *See Key W. Jetski, Inc. v. Sayre-Scibona*, No. 4:25-cv-10067, 2026

[3] "Florida courts apply the doctrine of unconscionability 'with great caution[.]'" *Lambert*, 2022 U.S. App. LEXIS 18787, at *13 (citing *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 284 (Fla. 1st Dist. Ct. App. 2003)). The doctrine is "not a mechanism that allows a party to 'avoid the consequences of a contract freely entered into simply because he or she elected not to read and understand its terms before executing it, or because, in retrospect, the bargain turns out to be disadvantageous.'" *Id.* "The central question in the procedural unconscionability analysis is whether the complaining party lacked a meaningful choice when entering into the contract." *Id.* at *14. (citing *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1157 n.3 (Fla. 2014)). Here, Plaintiff did not lack meaningful choice as she was advised to carefully read the policy before signing her Handbook Acknowledgment. *See* Wilson Decl., ¶6, Ex. B. Ultimately, Plaintiff agreed to the policy and decided to move forward with her employment with Defendant. *Id.*

U.S. Dist. LEXIS 96567, at *4 (S.D. Fla. Feb. 17, 2026). The Court should therefore enforce the Arbitration Policy and compel arbitration.

**IV. Citi Preserves Its Request for Appropriate Sanctions or Other Relief.**

The September 23, 2026 Order expressly warned that another frivolous or duplicative action based on the same matters could result in monetary sanctions or a narrowly tailored filing injunction. Plaintiff filed this action after that warning and again advances an erroneous EFAA theory the Court rejected in the two prior actions. Those circumstances warrant preservation of Citi's request for appropriate relief.

To keep the arbitration issue focused and avoid unnecessary procedural disputes concerning sanctions, Citi respectfully requests that the Court retain jurisdiction to consider an appropriately supported request for sanctions, fees, costs, or prospective filing restrictions upon separate motion or order to show cause. Citi does not rely on that request as a basis for compelling arbitration.

## CONCLUSION

For these reasons, Defendant respectfully requests that the Court: (1) compel Plaintiff to arbitrate all claims asserted in the Complaint; (2) stay this action pending arbitration; (3) retain jurisdiction to consider Citi's request for appropriate sanctions or other relief upon separate motion or order to show cause; and (4) grant such other relief as the Court deems just and proper.

## **LOCAL RULE 3.01(g) CERTIFICATE**

Counsel for Defendant conferred with Plaintiff on November 23, 2026 via e-mail regarding the relief requested in this Motion. Plaintiff opposed the relief requested.

Dated: November 24, 2026.

Respectfully submitted,

JACKSON LEWIS P.C.

By: */s/ Stephanie Adler-Paindiris*
Stephanie Adler-Paindiris
Florida Bar No. 0523283
stephanie.adler-paindiris@jacksonlewis.com
390 North Orange Avenue, Ste. 1285
Orlando, Florida 32801
Tele: (407) 246-8440
Fax: (407) 246-8441

Melissa M. Castillo
Florida Bar No. 1025338
melissa.castillo@jacksonlewis.com
Wells Fargo Center
100 South Ashley Drive, Suite 2200
Tampa, FL 33602
Tele: (813) 512-3210
Fax: (813) 512-3211

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 24th day of November 2026, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, and a copy was electronically furnished via email to yglazman@protonmail.com, *Pro Se Plaintiff*.

*/s/ Stephanie Adler-Paindiris*
Stephanie Adler-Paindiris

4911-8021-8594, v. 4